Argued and submitted September 23 at Century High School, Hillsboro, Oregon, reversed November 26, 2008

## In re one black-tailed doe deer named "Snowball"

### James FILIPETTI
and Francesca Mantei,
*Plaintiffs-Respondents,*

*v.*

### DEPARTMENT OF FISH AND WILDLIFE,
*Defendant-Appellant.*

Clackamas County Circuit Court
CV07100348; A137191

197 P3d 535

Cecil Reniche-Smith, Assistant Attorney General, argued the cause for appellant. With her on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Geordie Duckler argued the cause and filed the brief for respondents.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

HASELTON, P. J.

**HASELTON, P. J.**

Defendant, Oregon Department of Fish and Wildlife (ODFW), appeals from a trial court order directing ODFW to return to plaintiffs, James Filipetti and Francesca Mantei, one black-tailed doe named "Snowball" (the doe). After the doe had been seized from plaintiffs' property pursuant to a search warrant, plaintiffs sought to recover the doe by filing a motion under ORS 133.633 for "return or restoration of things seized." The trial court granted that motion, and, on appeal, ODFW contends that the court erred because plaintiffs failed to establish a "valid claim to rightful possession" of the doe pursuant to ORS 133.643(4). In particular, ODFW argues that (1) under ORS 133.643(4), a person can recover an item seized only if the person can lawfully possess that item; and (2) because plaintiffs did not (and do not) have a license or permit to hold wildlife, as required under OAR 635-049-0070, they cannot lawfully possess the doe. For the reasons that follow, we agree with ODFW. Consequently, we reverse.

The parties stipulated, as pertinent here, for purposes of plaintiffs' motion for return or restoration of things seized, to the following material facts: On September 12, 2007, plaintiffs were in possession of the doe, but they did not possess a permit or license to hold wildlife. On that date, a search warrant was issued and served on plaintiffs at their residence in Clackamas County; that warrant permitted the search and seizure of evidence of the crime of "Unlawful Holding of Wildlife (deer)" and "Unlawful Possession of Cervid to include any live deer (native or non-native) held in captivity." Under the authority of that warrant, the doe was seized from plaintiffs' property by law enforcement personnel and ODFW agents. Thereafter, however, no criminal charges were brought against plaintiffs—and, thus, as of the time the trial court rendered the order challenged on appeal, the doe was not needed for any evidentiary purpose.

On October 15, 2007, plaintiffs filed a "motion for return or restoration of things seized," pursuant to ORS 133.633, which provides, in part:

"(1)  Within 90 days after actual notice of any seizure, or at such later date as the court in its discretion may allow:

"(a)  An individual from whose person, property or premises things have been seized may move the appropriate court to return things seized to the person or premises from which they were seized."

Plaintiffs further, and specifically, asserted that they satisfied the requirements for "return or restoration" prescribed by ORS 133.643. That statute provides, in part:

"A motion for the return or restoration of things seized shall be based on the ground that the movant has a valid claim to rightful possession thereof, because:

"* * * * *

"(4)  Although the things seized were subject to seizure * * *, the movant is or will be entitled to their return or restoration upon the court's determination that they are no longer needed for evidentiary purposes[.]"

In particular, plaintiffs contended that they had a "valid claim to rightful possession" of the doe because the doe had been seized from them and was "no longer needed for evidentiary purposes."

ODFW opposed that motion. Specifically, ODFW argued that, under ORS 133.643(4), plaintiffs had to show more than just that the doe had been seized from them and was no longer needed for evidentiary purposes. Rather, ODFW contended, given the "entitled to" language in ORS 133.643(4), plaintiffs also had to establish that they could lawfully possess the doe—and, because plaintiffs did not have the legally required wildlife permits, they did not, and could not, meet that requirement. After hearing extensive arguments on the matter, the trial court granted plaintiffs' motion.

■  On appeal, the parties essentially adhere to their positions before the trial court. We emphasize, at the outset, that our role is not to assess the "equities" of the parties' interactions or the doe's "best interests." Rather, our exclusive, properly focused judicial function is to determine whether the trial court erred in its understanding and application of ORS 133.643(4). Thus, the only issue here is one of law—and, particularly, of statutory construction.

In addressing that issue, we apply the familiar principles of statutory construction set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). Our fundamental task is to discern, and, if possible, to effectuate the legislature's intent in enacting ORS 133.643(4). *Id.* at 610; *see also* ORS 174.020(1)(a) ("In the construction of a statute, a court shall pursue the intention of the legislature if possible."). We begin that inquiry by examining the statutory text in context and then, if necessary, resort to legislative history and maxims of statutory construction. *PGE*, 317 Or at 610-12.

ORS 133.643 provides, in part:

"A motion for the return or restoration of things seized shall be based on the ground that the movant has a valid claim to rightful possession thereof, because:

"(1)  The things had been stolen or otherwise converted, and the movant is the owner or rightful possessor;

"(2)  The things seized were not in fact subject to seizure * * *;

"(3)  The movant, by license or otherwise, is lawfully entitled to possess things otherwise subject to seizure * * *;

"(4)  *Although the things seized were subject to seizure * * *, the movant is or will be entitled to their return or restoration upon the court's determination that they are no longer needed for evidentiary purposes*; or

"(5)  The parties in the case have stipulated that the things seized may be returned to the movant."

(Emphasis added.) Thus, under the statute, proof of any of the five disjunctive conditions, ORS 133.643(1) to (5), is sufficient to establish the movant's "valid claim to rightful possession" of the seized item.

As noted, plaintiffs' claim to recovery was based, ultimately, only on ORS 133.643(4). Consequently, the issue narrows to the proper construction of that provision. Even more narrowly, the parties' dispute centers on the meaning of "entitled" under ORS 133.643(4).

Plaintiffs contend that, under ORS 133.643(4), once the court determines that the item seized is "no longer

needed for evidentiary purposes," then the person who possessed the item when it was seized is "entitled" to its return. That is, under plaintiffs' construction, "entitled" describes the *consequence* of satisfying a *condition*. To use a simple hypothetical: *If* a person buys a ticket, *then* she is "entitled" to see the movie. Thus, in plaintiffs' view: If the court determined that the doe was no longer needed for evidentiary purposes, then plaintiffs were entitled to the doe's return.

Conversely, ODFW understands "entitled" in subsection (4) to describe or connote an *additional* condition. That is, the court cannot order return of the item seized unless (1) the item is no longer needed for evidentiary purposes *and* (2) the person is "entitled" to possess the item. ODFW further asserts that a person cannot be "entitled" to possess an item unless that possession would be lawful. Thus, in ODFW's view, the court cannot order the return of an item, based on a claim of right under ORS 133.643(4), unless the court determines that the item is no longer needed for evidentiary purposes and the person seeking the return of the item would, upon its return, lawfully possess that item.

We first look to the term "entitled," which is not expressly defined in the statute. In the absence of a statutorily provided definition, we ordinarily assume that the legislature intended the words of the statute to carry their ordinary meanings. *PGE*, 317 Or at 611. "Entitle" is pertinently defined as: "to give a right or legal title to : qualify (one) for something : furnish with proper grounds for seeking or claiming something * * *." *Webster's Third New Int'l Dictionary* 758 (unabridged ed 2002). *See also Black's Law Dictionary* 573 (8th ed 2004) (defining "entitle" as "[t]o grant a legal right to or qualify for").

If the legislature intended "entitled" to mean "give[n] a right or legal title to," that construction of the term would comport with ODFW's contention that a movant must have the right to lawful possession of the things seized. Conversely, the legislature could have intended "entitled" to mean "qualif[ied] * * * for something" or "furnish[ed] with proper grounds for seeking or claiming something * * *." *Webster's* at 758. That construction of the term "entitled" would comport with plaintiffs' contention that the statute

does not necessarily require lawful possession of the things seized—but, instead, that "the court's determination that they are no longer needed for evidentiary purposes" by itself serves as the "qualification for" or "proper grounds for seeking or claiming" return of things seized.

■     We proceed to the context in which the legislature used the term. *See Bridgeview Vineyards, Inc. v. State Land Board*, 211 Or App 251, 262, 154 P3d 734, *rev den*, 343 Or 690 (2007) ("At the first level of analysis, we do not consider the text in isolation; rather, we employ rules of textual construction that bear directly on how to read the text, and we are careful to consider the text in context."). Context includes "other provisions of the same statute and other related statutes," as well as relevant judicial constructions of those statutes. *PGE*, 317 Or at 611; *State v. Thompson*, 166 Or App 370, 377, 998 P2d 762, *rev den*, 331 Or 192 (2000).

We first consider the immediate context, which is the phrase or sentence in which "is or will be entitled to their return or restoration" appears. That phrase is followed by the language *"upon* the court's determination that they are no longer needed for evidentiary purposes." ORS 133.643(4) (emphasis added). Essential to plaintiffs' construction of "entitled" is the premise that "upon," as used in ORS 133.643(4), connotes a *conditional* relationship between (a) "entitled to * * * return" and (b) "the court's determination that they are no longer needed * * *." That is: "If (b), then (a)." Or, to phrase the matter most concretely here: If the court makes the "no longer needed" determination, then the movant is "entitled" to return of the seized item.

Conversely, ODFW's construction of ORS 133.643(4) is predicated on "upon" being used in a *temporal* sense. That is, the movant must be "entitled" to return of the seized item *as of the time* the court determines that the item is "no longer needed for evidentiary purposes."

The parties' differing constructions correspond, plausibly, to two commonly employed usages of "upon." *See Webster's* at 2518 (defining "upon" as "immediately following on : very soon after[,]" "on the occasion of[,]" and "on the condition of"). The former definition comports with ODFW's "temporal" construction, and the latter with plaintiffs' "conditional" construction.

In sum, when the operative statutory text is viewed in most proximate context, either party's reading appears to be plausible. We note, however, that there are also aspects of ORS 133.643, viewed as a whole, that militate against the plausibility of either party's proposed construction.

First, if plaintiffs' proposed construction were correct, then the language "the movant is or will be entitled to [the item's] return or restoration upon" would be meaningless—or, at least, gratuitous. That is, if plaintiffs are correct that, under ORS 133.643(4), a person who possessed a seized item can automatically recover the item once the court determines that the item is "no longer needed for evidentiary purposes," the statute would read as follows:

> "A motion for the return or restoration of things seized shall be based on the ground that the movant has a valid claim to rightful possession thereof, because:
>
> "(4) Although the things seized were subject to seizure, the court has determined that they are no longer needed for evidentiary purposes."

In construing statutes, "we assume that the legislature did not intend any portion of its enactments to be meaningless surplusage." *State v. Stamper*, 197 Or App 413, 418, 106 P3d 172, *rev den*, 339 Or 230 (2005); *see* ORS 174.010 (in construing a statute, the court is not to "omit what has been inserted" and, "where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all"). Plaintiffs' proposed construction conflicts with those precepts.

Conversely, ODFW's proposed construction depends on the premise that "entitled" in ORS 133.643(4) means "*lawfully* entitled" to possession. The difficulty with that construction is that the legislature employed the term "lawfully entitled" in the immediately preceding subsection of the statute. *See* ORS 133.643(3) (providing that "valid claim to rightful possession" is shown where "[t]he movant, by license or otherwise, is *lawfully entitled* to possess things otherwise subject to seizure" (emphasis added)). Thus, when the legislature wanted to use the term "lawfully entitled," it knew how to do so. *See, e.g., Springfield Utility Board v. Emerald PUD*, 339 Or 631, 642, 125 P3d 740 (2005) (" '[U]se of a term in one section and not in another section of the same statute

indicates a purposeful omission.' " (quoting *PGE*, 317 Or at 611)). Further, in a related sense, ODFW's reading would appear to contradict another basic canon of statutory construction: The court is "not to insert what has been omitted" in a statute. ORS 174.010.

Our review of the statutory text in context thus demonstrates that the parties' proposed constructions of ORS 133.643(4) are both facially plausible but ostensibly problematic in some respects.[1] Because neither of those competing constructions is "wholly implausible," *Owens v. MVD*, 319 Or 259, 268, 875 P2d 463 (1994), the statute is ambiguous at *PGE*'s first level. *Cf. State v. Rodriguez*, 217 Or App 24, 28, 175 P3d 471 (2007), *rev den*, 345 Or 159 (2008) (emphasizing "how little it takes to demonstrate that a statute is 'ambiguous' "). Consequently, we proceed to the statute's legislative history.

The legislature enacted ORS 133.643 in 1973 as part of the Criminal Law Revision Commission's revision of the Criminal Procedure Code. The commentary to that revision discloses that the legislature did not intend a motion for return or restoration of things seized to serve as a vehicle for the return of things seized to a movant who could not lawfully possess them. That intent is primarily expressed in the context of things seized pursuant to search warrants that are ruled invalid:

> "[I]f, on motion, the seizure is shown to be unlawful, the property shall be returned to the person from whom it was taken, unless otherwise subject to lawful detention[,] * * * to ensure that contraband is not returned, even if taken by an unlawful seizure."

---

[1] We note, parenthetically, that our prior decisions referring to ORS 133.643 offer no assistance. In *State v. Terry*, 37 Or App 333, 336, 587 P2d 1033 (1978), the state argued that ORS 133.643(4) did not apply because the property was "contraband." We stated that "[i]t is arguable that if the [property was] * * * illegal to possess, the defendant did not have 'a valid claim to rightful possession thereof' under ORS 133.643." *Id.* at 337. We declined to address the issue, however, because we did not conclude that the property was illegal to possess. *Id. Cf. Mercer v. State*, 63 Or App 437, 439 n 2, 664 P2d 429 (1983) (observing in footnoted *dicta* that "[p]etitioner's marijuana plants are *contraband* and, as such, are not returnable in any event" (emphasis in original)).

Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Procedure Code, Final Draft and Report § 163, 103 (1972) (internal quotation marks omitted).

The commission emphasized that the grounds for a motion to suppress and for a motion for return or restoration differ greatly:

> "A narcotics pusher from whom a quantity of heroin has been seized by an unlawful search may be entitled to suppress the heroin as evidence, but not to get it back."

Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Procedure Code, Preliminary Draft No 2, Part II, Art 5, § 23, 66 (Nov 1971).

Finally, and dispositively, the commission emphasized that it did not intend the state to return items that were unlawful for the movant to possess, no matter how the state came into possession of them:

> "In most if not all circumstances, the legality of the search or seizure is not relevant to disposition of a motion for return or restoration of the property. *If possession of the things seized is unlawful, the state retains the things no matter how it got them.*"

*Id.* (emphasis added). That legislative history demonstrates conclusively that the legislature intended for the state to retain items seized if the movant's possession of them would be unlawful.

Plaintiffs remonstrate, nevertheless, that the legislative history is inapposite because the doe is not "contraband" in that it is possible, in some circumstances—*viz.*, if one holds the requisite permit—to possess wildlife lawfully. With respect, that misses the thrust of the legislature's intent. Many items, including certain types of controlled substances and weapons, *can* be lawfully possessed, but only under certain, legally specified conditions—and, unless those conditions are satisfied, possession of the item is unlawful.[2]

---

[2] *See, e.g.*, 21 USC § 844(a) (exempting from prosecution for possession of a controlled substance persons who obtained them pursuant to a valid prescription); ORS 166.260(1)(h) (excluding a person carrying a concealed firearm from the crime of "unlawful possession of a firearm," ORS 166.250(1)(a), if that person is licensed to carry a concealed handgun under ORS 166.291 and ORS 166.292); ORS

In plaintiffs' understanding, the legislature intended to empower persons from whom such items were lawfully seized to compel their return even if the movant's possession of the returned item would be unlawful because the movant did not hold the legally required license or permit. The legislative history flatly contradicts such an intent.

■      We thus conclude that a party seeking to compel the return or restoration of seized property based on a "valid claim to rightful possession" pursuant to ORS 133.643(4) must establish that (1) the item is "no longer needed for evidentiary purposes" and (2) the person is "entitled" to the return or restoration of—that is, can lawfully possess—the item sought to be recovered.

■      In this case, plaintiffs stipulated that they did not possess a permit or license to hold wildlife. Consequently, at the time the court granted plaintiffs' motion, plaintiffs could not lawfully possess the doe. *See* ORS 498.002 (prohibiting possession of wildlife in violation of wildlife laws or rules); ORS 497.308 (prohibiting acquiring and holding in captivity any live wildlife in violation of wildlife laws or rules); OAR 635-049-0010 (Fish and Wildlife Commission official policy opposing the private ownership of native cervids); OAR 635-049-0070 (prohibiting possession of cervids without a permit or license). Thus, plaintiffs failed to establish a "valid claim to rightful possession" of the doe under ORS 133.643(4).

The trial court erred in granting plaintiffs' motion for "return or restoration" of the doe.

Reversed.

---

166.272(3), (4) (exempting from arrest or charge and supplying affirmative defense to crime of "unlawful possession of a machine gun, short-barreled rifle, short-barreled shotgun or firearms silencer," ORS 166.272(1), if the person possesses proof of registration as required under federal law); ORS 475.309(1) (excepting persons who hold a registry identification card and who meet medical marijuana possession amounts from the criminal laws of the state for possession of marijuana).